**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-01313-RM-NYW

JENNIFER HORAL, a Colorado resident,

Plaintiff,

v.

IHR, INC. D/B/A MIKE WARD MASERATI,
a Colorado Corporation,

Defendant.

---

### RESPONSE TO DEFENDANT'S MOTION TO COMPEL

---

Plaintiff, Jennifer Horal ("Ms. Horal"), through counsel, submits the following Response to Defendant's Motion to Compel.

### FACTUAL AND PROCEDURAL BACKGROUND

This is the second Title VII case that Ms. Horal has brought against two different employers. In the first, filed in September 2016, Ms. Horal alleged that between October 2012 and September 2014, her former employer, AutoNation Jeep West Dealership ("AutoNation"), subjected Ms. Horal to extensive and pervasive sexual discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* In her complaint, Ms. Horal alleged three Title VII claims for disparate treatment on the basis of sex: discrimination and harassment, discrimination/retaliation, and hostile work environment. Ms. Horal also alleged two state-law claims: Intentional Infliction of Emotional Distress, and a violation of C.R.S § 24-34-402.5. All of the claims were based on allegations of severe sexual misconduct by AutoNation.

To support her claim for economic loss, Ms. Horal retained a testifying expert named Jeffrey E. Nehls. Mr. Nehls was (and is) an economist employed by Pacey Economics, Inc. He holds a Masters of Arts in Economics from the University of Colorado (Denver), and a Bachelor of Economics from the University of Puget Sound, in Tacoma, Washington. Mr. Nehls prepared a report, and testified at an arbitration hearing,[1] about the wages and benefits Ms. Horal had lost, and would lose in the future, due to AutoNation's harassment, discrimination, and retaliation. Mr. Nehls did not present any evidence on Ms. Horal's claim for emotional distress damages. The arbitrator declined to award economic damages although it awarded damages for emotional distress.

After Ms. Horal's employment with AutoNation ended, she searched diligently for a new job. Eventually, on September 6, 2016, she was offered and accepted a position as a sales consultant at IHR, Inc., d/b/a Mike Ward Maserati ("Maserati"). Upon joining Maserati, Ms. Horal executed an employment agreement guaranteeing her a salary of $3,000 per month for her first three months of employment. She was offered this guaranteed salary because it was understood that she would be receiving her training, and was not expected to sell a lot of vehicles, during that time. After the three month period, her salary would be commission and bonuses only.

On or about Friday, October 7, 2016, the General Sales Manager of Maserati, Peter Kim, conducted a meeting of the sales team. As part of a supposed team building exercise, the sales force was divided into teams to play "Family Feud." During that game, the following question was posed: "What does someone need to do (other than work harder) in order to get a promotion at work?" Ms. Horal responded by stating: "Get more education, get a certificate or degree." Mr. Kim

---

[1] The action against AutoNation was originally filed in this Court, but was subsequently removed to arbitration.

proceeded to mimic the sound of the buzzer, and retorted, "No, Jennifer, that answer is not on the board." After rejecting several other answers, Mr. Kim disclosed that the top answer was "sleeping with the boss."

This sexist "top answer" was demeaning and made Ms. Horal feel very uncomfortable. The following Monday, Ms. Horal went to Mike Ward ("Mr. Ward") (the dealer principal of Maserati) and asked if she could speak with him. She told him how uncomfortable Mr. Kim had made her in the sales meeting. Mr. Ward scheduled a meeting to discuss the matter. Mr. Ward, Mr. Kim, Lori Sanberg (from Human Resources) and Ms. Horal attended the meeting. Mr. Kim apologized during this meeting for making Ms. Horal uncomfortable.

That should have been the end of the matter. After Ms. Horal raised this issue, however, sales managers stopped sending Ms. Horal leads, as they had previously been doing, making it almost impossible for her to sell cars. Additionally, other employees began acting differently toward her. Among other things, they began watching her closely and reporting any perceived, minor errors by her to Mr. Ward.

Shortly after her meeting with Mr. Ward, Mr. Kim and Ms. Sanberg, Ms. Horal was asked to sign a new agreement with Maserati. This new agreement set a minimum number of vehicles she needed to sell during her three-month trial period. On November 1, 2016, about three weeks after Ms. Horal reported the discriminatory incident, she was terminated despite the fact that she still had more than a month left on her initial contract.

On or about July 12, 2017, Ms. Horal filed a claim with the EEOC, alleging that she had been discriminated and retaliated against based on her sex. After the EEOC issued a right to sue letter on April 4, 2018, Ms. Horal filed this action.

## ARGUMENT

Defendant has filed a Motion to Compel ("Motion") production of the following documents:

> [T]he economic appraisal report and other documents generated by Mr. Nehls in connection with his retention, disclosure and testimony in the AutoNation case .... Defendant therefore seeks to compel the production of all discoverable materials prepared by Mr. Nehls on behalf of Plaintiff, both in the present action as well as in the AutoNation case, including any reports Mr. Nehls has generated, any worksheets or other supporting documentation associated with any such reports, information about compensation Mr. Nehls has received in both cases, any facts or data provided to him by Plaintiff's attorney in connection with both reports, and any assumptions provided to him by Plaintiff's attorneys relied upon by him in forming his opinions.

(Mot at 3.) As set forth below, these documents are not discoverable under the Federal Rules of Civil Procedure and thus the Court should not compel their production.

### I.   THE EXPERT MATERIAL SOUGHT BY IHR IS NOT SUBJECT TO PRODUCTION UNDER FED. R. CIV. P. 26(a)(2)(B) or (b)(4)

The production of expert material is governed by Rule 26(a)(2)(B) and (b)(4).[2] Numerous courts, including courts in this district, have held that reports and documents from prior cases are not subject to discovery under these provisions. In *Von Schwab v. AAA Fire & Cas. Ins. Co.*, 2015 WL 1840123 (D. Colo. Apr. 21, 2015), for instance, the defendant requested production of "expert witness reports involving unrelated cases and parties on the basis of their representation that Mr. Craver [the expert] is biased, and their speculation that they may obtain evidence [showing bias] in [the expert's] prior reports." *Id.* at *2. This Court denied the request:

> [T]he court declines to permit the overbroad discovery sought by Plaintiffs' subpoena upon Mr. Craver. Federal Rule of Civil Procedure 26(a)(2)(B) provides in part that a "witness who is retained or specially employed to provide expert testimony ... [shall disclose] a written report ... listing [ ] any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." [*Id.*] **As other courts have held in passing on subpoenas requesting a party's expert's prior expert reports, "[b]y implication" a party "is not**

---

[2] The pertinent provisions of Rule 26(a)(2)(B) and (b)(4) are attached to this Response.

4

> **entitled to disclosure of the reports in those [prior] cases, regardless of their subject matter**."

*Id.* (quoting *Surles v. Air France*, 2001 WL 815522 at *7 (S.D.N.Y. July 19, 2001)), and citing *Trunk v. Midwest Rubber and Supply Co.*, 175 F.R.D. 664, 665 (D. Colo. 1997); *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo. on Nov. 15, 1987*, 720 F. Supp. 1442, 1444 (D. Colo. 1988).

Similarly, in *Trunk,* the plaintiff moved to quash a subpoena duces tecum seeking "other reports [the expert] has written for plaintiff's counsel . . . ." 175 F.R.D. at 664. The Court quashed the subpoena: "The scheduling order required production of information in accordance with Federal Rule of Civil Procedure 26(a)(2)(B), including 'a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.' **The Rule however, does not require an expert to produce any reports from unrelated litigation**." *Id.* at 664-65 (emphasis added).

Likewise, in *Gates v. Armstrong*, 2008 WL 205611 (D. Colo. Jan. 23, 2008), the plaintiff served subpoenas duces tecum on Defendants retained experts, seeking "bills and/or invoices generated by. . . three (3) retained experts during the past two (2) years for time spent "in any litigation related activity . . . ." *Id.* at *1. The Court quashed the subpoenas, holding: "Fed. R. Civ. P. 26(a)(2)(B) outlines the requirements for expert witness disclosure, and it does not include a requirement for disclosure of bills and/or invoices generated by expert witnesses and their staff, on any litigation matter, during the preceding two (2) years." *See also Jackson v. Dollar General Store*, 2014 WL 540828, at *2 (D. Utah Feb. 10, 2014) ("Fed. R. Civ. P. 26(a)(2)(B) 'does not require an expert to produce any reports from unrelated litigation.' Rather, Fed. R. Civ. P. 26(a)(2)(B)(v) only

5

requires an expert witness to provide "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition....") (quoting *Trunk*, 175 F.R.D. at 665.)

In its Motion, IHR attempts to distinguish *Von Schwab*, S*urles*, *Trunk*, and *Stapleton* (and presumably *Gates* and *Jackson* by inference) on the ground that those cases "focus[ed] on the burdensome [nature] of the request." (*See* Mot at 5 n.2.) Here, IHR argues, there is no burden; "Defendants [sic] seek just the one, already identified report." (*Id.*) IHR is wrong in two respects. First, by its own admission, made in its Motion, IHR seeks [t]]he economic appraisal report **and other documents generated by Mr. Nehls in connection with his retention, disclosure and testimony in the AutoNation case** .... **including any reports Mr. Nehls has generated, any worksheets or other supporting documentation associated with any such reports, information about compensation Mr. Nehls has received in both cases, any facts or data provided to him by Plaintiff's attorney in connection with both reports, and any assumptions provided to him by Plaintiff's attorneys relied upon by him in forming his opinions**." (Emphasis added.) Thus, the assertion that IHR is only seeking "one . . . prior report" is flatly wrong.

Second, the Courts did not deny the discovery of other expert material because the discovery sought was unduly burdensome. Rather, they denied the requests because under Rule 26(a)(2)(B)**,** "[b]y implication" a party "is not entitled to disclosure of the reports in those [prior] cases, regardless of their subject matter." *Von Schwab*, 2015 WL 1840123, at *2 (quoting *Surles*, 2001 WL 815522 at *7). Thus, requests for prior reports, regardless whether it is one report or twenty, are not appropriate under Rule 26(a)(2)(B). In fact, in *Trunk*, the Court found that requiring production of prior reports would unduly burden the producing party:

> "[T]he court finds that conclusions and opinions offered in unrelated litigation do not fall within the scope of Rule 26 discovery **and "would unnecessarily burden**

6

> **litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand**. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition."

175 F.R.D. at 665 (emphasis added) (quoting *In re Air Crash Disaster*, 720 F. Supp. at 1444). That is precisely the situation here. If the Court requires production of prior material by Mr. Nehls, he will be required to defend his opinions in two cases rather than one; and this case will become not only a litigation of this case, but also a re-litigation of the earlier case.

## II. THE EXPERT MATERIAL SOUGHT BY IHR IS NOT SUBJECT TO PRODUCTION BECAUSE IT IS IRRELEVANT.

IHR also argues in the Motion that the information it seeks to compel is "highly relevant to Defendant's ability to challenge Mr. Nehls' bias, creditability, and consistency as well as his methodology and ultimate opinions." (Mot. at 3.) IHR's argument is pure speculation; it is merely guessing that if it is allowed to go fishing, it might snag a fish. Courts have commonly rejected such discovery. In *In re Air Crash Disaster*, 720 F. Supp. at 1444, the Court explained:

> We find that the discovery of material relevant to the impeachment of an expert envisioned by courts construing Rule 26(b) is limited to materials possessed by an expert **and related to the case at hand**. *See In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41 (N.D. Cal. 1977). Materials an expert reviews and then disregards in forming the opinion **to which he will testify** are relevant to the impeachment of the witness during trial. Discovery of all material possessed by an expert **relating to the matter at hand** develops a record which prevents "a sanitized presentation at trial, purged of less favorable opinions expressed at an earlier date."

(Quoting *Quadrini v. Sikorsky Aircraft Division*, 74 F.R.D. 594, 595 (D. Conn. 1977)). *See also Jackson v. Dollar General Store*, 2014 WL 540828, at *2 (D. Utah Feb. 10, 2014) ("The Court questions the relevance of Nelson's unrelated expert reports. *See Trunk*, 175 F.R.D. at 665 (concluding that a party's subpoena of an expert's "conclusions and opinions [ ] in unrelated

litigation" sought irrelevant and burdensome information even though the party wanted the information for impeachment purposes).  Thus, IHR has not, and cannot present any legitimate reason why the Court should require production of the irrelevant material IHR seeks.

## CONCLUSION

Because the demanded discovery is implicitly precluded by Rule Fed. R. Civ. P. 26(a)(2)(B), and is irrelevant, Ms. Horal requests the Court to deny the Motion to compel.

Respectfully submitted this 1st day of March, 2019.

ANDERSON BARKLEY, LLC

*A duly signed copy is on file at the offices of Anderson Barkley, LLC*

s/ Jeanine M. Anderson
*Jeanine M. Anderson*
Anderson Barkley, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 506-1766
Jeanine@AndersonBarkleyLaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March, 2019, a true and correct copy of the foregoing was served via CM/ECF on:

William A. Rogers, III
Dietze & Davis, P.C.
2060 Broadway, Suite 400
Boulder, CO 80302
(303) 447-1375
wrogers@dietzedavis.com

s/Jeanine M. Anderson
Jeanine M. Anderson

## FED. R. CIV. P. 26(a)(2)(B) and (b)(4)

**(2) Disclosure of Expert Testimony**.

(A) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

    (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

    (ii)    the facts or data considered by the witness in forming them;

    (iii)    any exhibits that will be used to summarize or support them;

    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

**(b) Discovery Scope and Limits.**

**(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. . . .

**(4) Trial Preparation: Experts**. . . .

9

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

    **(i)** relate to compensation for the expert's study or testimony;

    **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

    **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.